J-S41016-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: L.J.D.H., J.D.H., T.M.H., K.F.L.H., AND K.J.H., MINOR CHILDREN | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: L.D.H., MOTHER | : : : : | |
| | : | No. 701 EDA 2018 |

Appeal from the Order Dated February 5, 2018
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-AP-0000934-2017,
CP-51-AP-0000935-2017, CP-51-AP-0000936-2017,
CP-51-AP-0000937-2017, CP-51-AP-0000938-2017,
FID No. 51-FN-387238-2009

BEFORE: GANTMAN, P.J., OLSON, J., and STEVENS*, P.J.E.

MEMORANDUM BY OLSON, J.: **FILED OCTOBER 11, 2018**

L.D.H. ("Mother") appeals from the decrees dated and entered on February 5, 2018, granting the petitions filed by the Philadelphia Department of Human Services ("DHS" or the "Agency") seeking to terminate involuntarily her parental rights to her minor children, L.J.D.H. (born in April of 2009); J.D.H. (born in October of 2007); T.M.H. (born in August of 2005); K.F.L.H. (born in July of 2001); and K.J.H. (born in April of 1999) (collectively, the

_____

* Former Justice specially assigned to the Superior Court.

"Children"), with their putative father, W.H. ("Father"), pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).[1,2] We affirm.

In its opinion pursuant to Pa.R.A.P. 1925(a), the trial court aptly set forth the factual background and procedural history of this appeal, as follows:

> DHS first became aware of this family when it received a General Protective Services report alleging that the Children were truant from school. (N.T. 2/5/18 at 6). At an adjudicatory hearing held on April 26, 2016, this [c]ourt adjudicated the Children dependent pursuant to the Juvenile Act[, 42 Pa.C.S.A. § 6302(1)

---

[1] The trial court entered separate decrees on February 5, 2018, that involuntarily terminated the parental rights of Mother, Father and any unknown, putative father to the Children. **See** Opinion, N.T., 4/3/18, at 1, n.1. We issued a Rule to Show Cause order to ascertain why counsel for Mother filed a single notice of appeal from five separate decrees terminating Mother's parental rights to her five children. In his response dated March 27, 2018, counsel explained that the error occurred through oversight. Our Supreme Court recently suggested that separate notices of appeal must be filed where appeals have been taken from more than one trial court docket. **See Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018). In **Walker**, the Supreme Court held that "Rule 341(a) will, in accordance with its Official Note, require that when a single order resolves issues arising on more than one lower court docket, separate notices of appeal must be filed. The failure to do so will result in quashal of the appeal." **Id.** at 977. Language in **Walker** indicates, however, that the holding will apply prospectively from the date of the decision, June 1, 2018. In view of this, we elect to forgo quashal but caution counsel to proceed with greater care in future cases.

[2] Father is not a party to this appeal nor is any unknown father a party, nor has Father or any unknown putative father filed his own appeal. To the extent that the trial court changed the permanency goal for the Children to adoption in these decrees, Mother has waived any challenge to the goal change by her failure to raise the issue in her concise statement of errors complained of on appeal as well as the statement of questions involved section of her brief. **See Krebs v. United Refining Company of Pennsylvania**, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his concise statement of errors complained of on appeal and the statement of questions involved in her brief on appeal).

and (5),] and allowed the Children to remain in Mother's home. (Trial Ct. Order 4/26/16 at 1). On April 28, 2016, DHS removed the Children from Mother's home pursuant to an Order of Protective Custody after it received another report alleging inappropriate medical care, truancy and unsuitable housing. (N.T. 2/5/18 at 7). A shelter care hearing was held for the Children on April 28, 2016, at which time [the] [c]ourt granted full legal custody of the Children to DHS and placed the Children with their Paternal Grandmother, L.B. (Trial Ct. Order 4/28/16 at 1). Mother was granted liberal supervised visits with the Children at the agency. (*Id.*).

Trial Court Opinion, 4/3/18, at 2.

On September 21, 2017, the Agency filed petitions seeking involuntary termination of Mother's and Father's parental rights and a change in the Children's permanency goal to adoption pursuant to the Juvenile Act, 42 Pa.C.S. § 6351. On February 5, 2018, the trial court commenced an evidentiary hearing on the petitions. Mother was not present, and her counsel, Attorney Daniel Kurland, who appeared on her behalf, did not present any evidence. Father and his counsel, Attorney Lisa Visco, were present. The Children were represented by Attorney Meredith Rogers, as their child advocate (legal counsel), and their former child advocate, Attorney Jay Stillman, as their GAL. N.T., 2/5/18, at 6.[3] The Agency, through its counsel,

_____

[3] In ***In re Adoption of L.B.M.***, ____ Pa. ____, 161 A.3d 172 (2017) (plurality) our Supreme Court held that 23 Pa.C.S. § 2313(a) requires that counsel be appointed to represent the legal interests of any child involved in a contested involuntary termination proceeding. The Court defined a child's legal interest as synonymous with his or her preferred outcome. The ***L.B.M.*** Court did not overrule this Court's holding in ***In re K.M.***, 53 A.3d 781 (Pa. Super. 2012), that a guardian *ad litem* ("GAL") who is an attorney may act as legal counsel

- 3 -

Attorney Rachel Hantgan, presented the testimony of Sheronda Ball, a caseworker with the Community Umbrella Agency ("CUA") and Turning Points for Children, and Joe Sargent, the CUA case manager. *Id.* at 6. Father presented the testimony of his mother, L.B. ("Paternal Grandmother"), who was the Children's caregiver since April of 2016. *Id.* at 38.

In its Rule 1925(a) opinion, the trial court made findings of fact with regard to the testimony, as follows:

> Sheronda Ball[ ] testified that the Children had been in foster placement for approximately twenty-two months. (N.T. 2/5/18 at 20). Ms. Ball testified that Mother's single case plan objectives were as follows: 1) attend the Children's medical appointments and school meetings with the kinship parent; 2) complete parenting classes at the Achieving Reunification Center ("ARC"); 3) seek mental health parenting classes at . . . [ARC]; 3) seek mental health treatment and register for Intellectual Disability Services [("IDS")]; and 4) secure stable housing. (*Id.* at 8). In regards to Mother's compliance with her objectives, Ms. Ball testified that Mother was noncompliant. (*Id.* at 15).

---

pursuant to section 2313(a) as long as the dual roles do not create a conflict between the child's legal and best interests. In *In re T.S.*, 2018 Pa. LEXIS 4374 (filed August 22, 2018), ___ Pa. ___ ,___ A.3d _____ (2018), the Supreme Court held that the trial court did not err in allowing the children's GAL to act as their sole representative during the termination proceeding because, at two and three years old, they were incapable of expressing their preferred outcome. The Court explained, "if the preferred outcome of the child is incapable of ascertainment because the child is very young and pre-verbal, there can be no conflict between the child's legal interests and his or her best interests; as such, the mandate of Section 2313(a) of the Adoption Act that counsel be appointed 'to represent the child,' 23 Pa.C.S. § 2313(a), is satisfied where the court has appointed an attorney-[GAL] who represents the child's best interests during such proceedings." *Id.* at ___, 2018 Pa. LEXIS 4374 at *27-28. Here, both legal counsel and a GAL were appointed to represent the Children, and the trial court acknowledged that the Children's express preferred outcome was adoption by their paternal grandmother. N.T., 2/5/17, at 60.

Specifically, Mother does not engage in the Children's medical treatment. (***Id.*** at 8-9). Ms. Ball testified that K.F.L.H. has a brain tumor and is being closely monitored by medical professionals. (***Id.*** at 21). K.F.L.H. also has medical issues with her liver and cholesterol. (***Id.***). Ms. Ball indicated that it would be important for Mother and Father to attend K.F.L.H.'s medical appointments in order to understand the type of care that K.F.L.H. needs; however, neither parent consistently attends K.F.L.H.'s medical appointment. (***Id.*** at 22). T.H. was diagnosed with autism and a speech impediment and receives services from Child Guidance.[FN1] (***Id.*** at 23). Parents have not participated in T.H.'s services nor have they attended his medical appointments. (***Id.***).

With respect to parenting classes, Mother completed a parenting class at the ARC. (***Id.*** at 9). Mother was also referred to family school in order to receive additional parenting skills but was prematurely discharged as a result of non-compliance and inconsistent attendance. (***Id.***). Mother also had a mental health evaluation at Behavioral Health Services, which recommended that she participate in individual therapy. (***Id.*** at 9-10). Mother has never successfully completed a mental health program and did not engage in therapy. (***Id.*** at 10). Mother also failed to register for Intellectual Disability Services. (***Id.*** at 13)[.]

In regards to Mother's housing, CUA determined that Mother's home was unsuitable for the Children when they visited in May 2017. (***Id.*** at 10-11). CUA offered to assist the parents with housing repairs, but were unable to assist the family because Mother would not allow them back into the home. (***Id.*** at 31). Father would set up appointments with CUA to visit the home, but would not allow CUA entry into the home when they arrived. (***Id.***). Ms. Ball stopped trying to access the home in November 2017 because Mother and Father were uncooperative. (***Id.*** at 12). Mother denied that her home needed repairs. (***Id.*** at 30). Mother also falsely reported that she moved to another location. (***Id.*** at 12). Ms. Ball testified that Mother's single case plan objectives have been consistent throughout the life of this case and that she discussed the objectives with Mother. (***Id.*** at 19; 29). Mother indicated that she did not need any of the services recommended by CUA. (***Id.*** at 30).

Ms. Ball testified that it would be in the Children's best interest to terminate Mother's parental rights as Mother has never demonstrated a willingness to cooperate with CUA. (***Id.*** at

19-25). Ms. Ball also indicated that Mother could not keep the Children safe. (*Id.*). Ms. Ball testified that it would be in the Children's best interest to be adopted as they are thriving in their pre-adoptive home, have expressed their desires to be adopted and have never expressed an interest in visiting their parents. (*Id.* at 20; 33-34). The CUA case manager, Joe Sargeent, also testified that the Children are safe in Paternal Grandmother's home and have all indicated that they want to be adopted. (*Id.* at 36).

Paternal Grandmother also testified at the TPR hearing. Paternal Grandmother indicated that she notifies the parents of the Children's medical appointments and that Mother never attends any appointments. (*Id.* at 39). Paternal Grandmother also indicated that Mother never visits the Children. (*Id.* at 40-41). Paternal Grandmother stated that the Children are doing well and do not express an interest in seeing their parents. (*Id.* at 41). Paternal Grandmother wishes to adopt all five children. (*Id.*).

_____

[FN1] Child Guidance is a resource center that provides community-based therapeutic, supportive and preventative behavioral healthcare services for children and families with mental health needs and developmental disabilities.

Trial Court Opinion, 4/3/18, at 2-4 (footnote in original).

On February 5, 2018, the trial court entered the decrees granting the petitions to terminate involuntarily Mother's parental rights to the Children, pursuant to the Adoption Act, 23 Pa.C.S. § 2511. On March 5, 2018, Mother timely filed notices of appeal, along with concise statements of errors complained of on appeal.

On appeal, Mother raises the following issues with regard to the termination petitions:

1. Whether the trial court committed reversible error when it involuntarily terminated Mother's parental rights where such

determination was not supported by clear and convincing evidence under the [A]doption [A]ct, 23 [Pa.]C.S.A. § 2511(a)(1), (2), (5), (8) and (b)[?]

2. Whether the trial court committed reversible error when it involuntarily terminated Mother's parental rights without giving primary consideration to the effect that the termination would have on the developmental, physical and emotional needs of the child as required by the [A]doption [A]ct, 23 [Pa.]C.S.A. § 2511(b)[?]

3. Whether the trial court erred because the evidence was overwhelming and undisputed that Mother demonstrated a genuine interest and sincere, persistent, and unrelenting effort to maintain a parent-child relationship with her children[?]

Mother's Brief at 8.

With regard to section 2511(a)(1), Mother argues that the trial court erred when it ruled that she had, for a period of at least six months, evidenced a settled purpose of relinquishing her parental rights to the Children or had failed to perform her parental rights. Mother asserts that the evidence at trial clearly demonstrated that she had taken substantial and meaningful steps towards exercising her parental duties and being a mother to her children. Mother states that she attended a permanency review hearing on May 30, 2016, and that the testimony reflected that she was moderately compliant with her SCP goals, as she had completed anger management, healthy relationship, and parenting services through ARC. *See* Mother's Brief at 15.

With regard to section 2511(a)(2), Mother contends that the trial court erred when it ruled that her repeated and continued incapacity, abuse, neglect or refusal has caused the children to be without essential parental care, control

or subsistence necessary for their physical or mental wellbeing, and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by her. Mother asserts that the evidence presented at trial showed that she attempted to complete her FSP goals as she understood them. Mother alleges that she never fully understood her objectives and, therefore, could not complete them. Mother's Brief at 16 (citing N.T., 2/5/2018, p. 30 at 1-14). Mother states,

> Specifically, notwithstanding the fact that Mother refused IDD [Intellectual and Developmental Disabilities] services, it is not clear that she understood what IDD services truly were. Ms. Ball simply stated that Mother did not wish to see another therapist. If Mother had fully understood that her intellectual disabilities warranted additional support in her attempts to reunify with her children perhaps she would have accepted said services. (N.T.[,] 2/5/2018, p. 30 at 1-14).

Mother's Brief at 16.

Finally, Mother contends that the trial court erred when it ruled that the requirements of section 2511(b) were satisfied. Mother argues that the testimony presented at the hearing suggested that, had she fully understood her objectives, then she would have been inclined to complete them, and, once completed, it would have been in the best interests of the children to not terminate Mother's parental rights. Mother asserts that evidence of her disabilities and her failure to understand her FSP objectives/goals provides clear and convincing evidence that the trial court improperly terminated her parental rights to the Children. *Id.*

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, [614 Pa. 275, 284,] 36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, 613 Pa. 371[, 455], 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, [575 Pa. 647, 654-655], 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*
>
> As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, [608 Pa. at 28-30], 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, [539 Pa. 161, 165,] 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 616 Pa. 309, 325-326, 47 A.3d 817, 826-827 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. **In re R.N.J.**, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained, "[t]he standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" **Id.** (*quoting* **In re J.L.C.**, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). **See In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). We will consider section 2511(a)(1) and (2) together, as did the trial court. Section 2511 provides, in relevant part, as follows:

> **§ 2511. Grounds for involuntary termination**
>
> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
> >
> > (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

- 10 -

\* \* \*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

With respect to subsection 2511(a)(1), our Supreme Court has held as follows.

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Adoption of Charles E.D.M.*, 550 Pa. 595, 602, 708 A.2d 88, 92 (Pa. 1988).

Further, this Court has stated:

the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 854-855 (Pa. Super. 2004) (citations omitted).

The Supreme Court set forth our inquiry under section 2511(a)(2) as follows.

As stated above, § 2511(a)(2) provides statutory grounds for termination of parental rights where it is demonstrated by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." . . .

This Court has addressed incapacity sufficient for termination under § 2511(a)(2):

A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.

*In re Adoption of J.J.*, [511 Pa. 599, 605,] 515 A.2d 883, 891 (Pa. 1986) (*quoting In re: William L.*, [477 Pa. 322, 345,] 383 A.2d 1228, 1239 (Pa. 1978).

*In re Adoption of S.P.*, 616 Pa. at 326-327, 47 A.3d 827.

This Court has long recognized that a parent is "required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *In re A.L.D.* 797 A.2d 326, 340 (Pa. Super. 2002) (citation omitted). "[A] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id.* (citation omitted).

Regarding the termination of Mother's parental rights to the Children, the trial court stated as follows:

Under these specific facts and circumstances, [the c]ourt found clear and convincing evidence that Mother demonstrated a settled purpose of relinquishing parental claim to the Children and failed to perform any parental duties for at least six months preceding the filing of the termination petitions on September 21, 2017. The Children were removed from Mother's home approximately seventeen months prior to the filing of the petitions, and Mother's refusal to parent since that time was demonstrated by her failure to actively participate in the Children's lives. According to the testimony of the CUA social worker, many of the Children have serious medical issues; however, Mother has never attended the Children's medical appointments. (*Id.* at 21-23). Paternal Grandmother also testified that Mother does not visit the Children or attend their medical appointments. (*Id.* at 39). Mother's refusal to participate in the Children's lives demonstrates her desire to relinquish parental claim to the Children. Furthermore, based on the allegations of medical neglect and inadequate housing, Mother was referred to family school for parenting classes; however, Mother never completed family school. (*Id.* at 9). These minimal objectives would have demonstrated Mother's interest in caring for her children; however, Mother made little efforts to fulfill these objectives. Additionally, Mother offered no evidence that she made even the slightest efforts to re-establish ties with her children during the six-month period prior to the filing of the termination petitions. Accordingly, this Court found termination of Mother's parental rights warranted pursuant to 2511(a)(1).

* * *

In *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003), Westmoreland County Children's Bureau took custody of the child, citing the mother's inability to care for her child due to the mother's mental handicap. *Id.* at 1268. Following adjudication of the child, the mother was ordered to apply for welfare programs, obtain housing, and receive counseling in order to promote her independence and parenting skills. *Id.* at 1269. It was reported that the mother did not attempt to obtain welfare or housing and refused counseling. *Id.* As a result, the trial court terminated the mother's parental rights approximately two years

- 13 -

after the child was removed from the home. ***Id.*** at 1270. The Superior Court found that the mother's inability to develop parenting skills, along with her refusal to fulfill her objectives, would leave the child without proper parental care; thus, termination of the mother's parental rights was warranted under Section 2511(a)(2). ***Id.*** at 1273.

Applying ***M.E.P.*** and the elements set forth under 2511(a)(2) to the instant case, it is clear that DHS met [its] burden of demonstrating that termination was proper. The evidence established that "incapacity" and "refusal" under 2511(a)(2) existed given that Mother failed to demonstrate a concrete desire or ability to remedy the problems that led to the Children's placement. The CUA worker credibly testified that Mother refused the services offered to her, including mental health treatment, assistance with home repairs and family school. (N.T. 2/5/18 at 9-10; 31-32). Mother's BHS evaluation also recommended individual therapy for Mother to address her dependency issues and coping skills. (***Id.*** at 9-10). The record shows that Mother [declined] therapeutic services. (***Id.*** at 30). Without therapy, Mother would be unable to learn the coping skills required to successfully parent the Children. Moreover, the evidence established that "neglect" existed given that Mother did not visit the Children or participate in their medical treatment. (***Id.*** at 21-23; 39). Considering that medical neglect was one of the reasons DHS became involved with this family, the CUA social worker believed it imperative that Mother engage in the Children's medical treatment. (***Id.*** at 22). Mother's refusal to do so evidences her lack of interest in being reunified with the Children. [The c]ourt found that Mother's failure to comply with her objectives throughout the life of this case has left the Children without essential parental care, and the cause of such neglect, refusal and continued incapacity will not be remedied by Mother. Based on the foregoing, [The c]ourt found that competent evidence existed to justify the termination of Mother's parental rights pursuant to Section 2511(a)(2).

Trial Court Opinion, 4/3/18, at 6-9.

After a careful review of the record, this Court finds that the trial court's

conclusion that there is sufficient evidence to warrant the termination of

Mother's parental rights under section 2511(a)(1) and (2) is supported by

- 14 -

competent, clear and convincing evidence in the record. *In re Adoption of S.P.*, 616 Pa. at 325-326, 47 A.3d at 826-827. To the extent that Mother suggests that she might have participated in services had she understood the services available to her, rather than refused them, the trial court found that Ms. Ball credibly testified that she had explained these services to Mother, and Mother stated that she did not need to go to another counselor, and refused the services. N.T., 2/5/18, at 30. *See* Trial Court Opinion, 4/3/18, at 9. Thus, we find Mother's argument that the trial court erred in terminating her parental rights because she demonstrated a genuine interest and sincere, persistent, and unrelenting effort to maintain a parent-child relationship with her children lacks merit.

If we find sufficient evidence to satisfy section 2511(a), we proceed to review whether there was sufficient evidence to support the termination of Mother's parental rights under section 2511(b). *See In re Adoption of C.L.G.*, 956 A.2d 999, 1008-1009 (Pa. Super. 2008) (*en banc*). This Court has stated that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). *Id.* In reviewing the evidence in support of termination under section 2511(b), our Supreme Court stated as follows.

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In*

- 15 -

*re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [533 Pa. 115, 121, 620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 620 Pa. 602, 628-629, 71 A.3d 251, 267 (Pa. 2013).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, section 2511(b) does not require a formal bonding evaluation." *In re Z.P.,* 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted). Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances . . . where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child." *In re K.Z.S.*, 946 A.2d 753, 762 (Pa. Super. 2008).

A parent's abuse and neglect are likewise a relevant part of this analysis:

> [C]oncluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent . . . Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood.

- 16 -

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted). Thus, the court may emphasize the safety needs of the child. *See In re K.Z.S.*, 946 A.2d at 763 (affirming involuntary termination of parental rights, despite existence of some bond, where placement with mother would be contrary to child's best interests). "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted).

In its Rule 1925(a) opinion, the trial court stated the following with regard to section 2511(b):

> In the instant matter, [the c]ourt determined that the Children will not suffer irreparable emotional harm if Mother's parental rights are terminated. There was compelling testimony that the Children are not bonded with Mother. (*See* N.T. 2/5/18 at 39-41). The CUA social workers and Paternal Grandmother each testified that the Children do not request to see Mother. (*Id.* at 33-34; 36; 41). Paternal Grandmother also indicated that Mother does not regularly visit the Children. (*Id.* at 41). Mother failed to offer any evidence establishing the existence of a parent-child bond. The testimony demonstrated that the Children's primary bond is with the Paternal Grandmother. Furthermore, [the c]ourt found Mother's sporadic visits with the Children insufficient to foster a meaningful and healthy parental connection. [The c]ourt believes that [it is] no closer to reunification now than [ ] when this case first came in in April 2016.
>
> Additionally, in determining that termination would best serve the needs and welfare of the Children, [the c]ourt

- 17 -

considered that the Children have not expressed an interest in seeing their parents and want to be adopted. (*Id.* at 33-34). For the foregoing reasons, [the c]ourt properly granted DHS's petition to involuntarily terminate Mother's parental rights pursuant to Section 2511(b).

Trial Court Opinion, 4/3/18, at 11-13.

After a careful review of the record, this Court finds that the trial court's conclusion that there is sufficient evidence to warrant the termination of Mother's parental rights under section 2511(b) is supported by competent, clear and convincing evidence in the record. *In re Adoption of S.P.*, 616 Pa. at 325-326, 47 A.3d at 826-827. The trial court appropriately considered the needs of the Children and any affection the young children might feel for Mother. *In re T.S.M.*, 620 Pa. at 628-629, 71 A.3d at 267; *In re K.Z.S.*, 946 A.2d at 763. Although Mother believes that she still has a bond with the Children and has had a bond with them since their birth, (*see* Mother's Brief at 19), this Court has held that a parent's love of his child, alone, does not preclude a termination. *See In re L.M.*, 923 A.2d 505, 512 (Pa. Super. 2007) (stating that a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights). It is well-settled that "we will not toll the well-being and permanency of [a child] indefinitely." *In re Adoption of C.L.G.*, 956 A.2d at 1007 (citing *In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.")). Thus, we find no abuse of discretion in the

trial court's termination of Mother's parental rights to the Children pursuant to section 2511(a)(1), (2), and (b). Accordingly, we affirm the decrees of the trial court.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/11/18